UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 1:24-cr-327 (TJK) |
| : | |
| CHRISTOPHER BELLIVEAU, : | |
| Defendant. : | |

### UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO MODIFY CONDITIONS OF RELEASE

The United States of America, by and through the undersigned Assistant U.S. Attorney, respectfully asks this Court to deny defendant Christopher Belliveau's motion to modify conditions of release. *See* ECF No. 21. Specifically, Belliveau asks this Court to "to travel to the District of Columbia for the purpose of attending President Donald Trump's second inauguration on Monday January 20, 2025." *Id*. at 1. Contrary to Belliveau's self-designation that "there is no reason to believe that Belliveau will be violent or present any danger to the residents of the District if the Court grants his request to attend the inaugural event," *Id*. at 3, Belliveau presents a danger to the D.C. community, including the law enforcement officers who defended the Capitol on January 6, 2021.

### BACKGROUND

On January 6, 2021, thousands of rioters took part in an attack on the U.S. Capitol in an effort to stop the certification of the results of the 2020 presidential election. These rioters forced their way into the U.S. Capitol building, requiring elected officials and their staff to flee or shelter in place and resulting in hundreds of injured officers and even multiple deaths. Belliveau joined a group of rioters on the Northwest Lawn of the Capitol grounds. ECF No. 1-1 at 2. At the time, rioters in that area, including Belliveau, were congregated behind temporary fencing comprised of

1

interlocking bicycle racks. *Id*. At approximately 2:10 p.m., the rioters crossed the bicycle rack fencing and advanced on the police. *Id*. at 3. Belliveau was at the front of the rioters who did so. Belliveau carried a bullhorn in this left hand and gestured at the police officers with his right hand as he approached them. *Id*. Belliveau approached a U.S. Capitol Police Officer and pointed directly at her. He walked back, grabbed a green cannister, and walked back towards the U.S. Capitol Police Officers. *Id*. at 4. Based on the investigation, the green cannister is likely bear spray. *Id*. at 5. Belliveau discharged an orange spray from the green cannister at the U.S. Capitol Police Officer. *Id*. at 6-7. The U.S. Capitol Police Officer pursued Belliveau. *Id*. As Belliveau ran backwards toward the crowd and away from the U.S. Capitol Police Officer, he continued to discharge orange spray at her. *Id*. The orange spray hit and made physical contact with her. *Id*. This is all captured on video.

Belliveau was not done. After spraying an officer with bear spray, Belliveau ran up the Northwest stairs of the Capitol building, and, as captured by CCTV video, breached the Capitol building while wearing a helmet with the tinted visor or goggles covering his face and carried the bullhorn and a hockey stick with a flag wrapped around it. *Id*. at 10. Belliveau travelled to an area of the Capitol known as the Crypt, where rioters confronted a police line. *Id*. at 11. He stayed inside the Capitol for approximately 15 minutes before exiting through a window next to the Senate Wing Door. *Id*.

The FBI also obtained video recorded on the night of January 5, 2021, which shows, among other things, groups of persons near the area of Washington D.C. known as "Black Lives Matter" plaza chanting "F*ck Antifa" and confronting police officers that were trying to control the crowd. In this video footage, Belliveau is shown wearing what appears to be the same black helmet and the same black and white Nike sneakers that he wore on January 6, and carrying what appears to

be the same hockey stick with a flag wrapped around it and same bullhorn that he carried on January 6. *Id*. at 13.

On January 6, Belliveau sprayed a Capitol Police Officer with bear spray and unlawfully entered the U.S. Capitol with a dangerous or deadly weapon in the midst of a violent riot. The Government agreed that Belliveau may remain on release pending trial, without a curfew, home detention, or monitoring – but not without conditions. Here, the condition that Belliveau be prohibited from traveling to Washington, D.C. except for his court proceedings is among the minimum conditions necessary to ensure the safety of the community. Belliveau's involvement in the January 6, 2021 riot and the circumstances surrounding his arrest justify this restriction. Accordingly, the Court should deny Belliveau's motion.

## ARGUMENT

### I.  Applicable Authority

Under the Bail Reform Act, if a judicial officer determines that release under two standard conditions (not committing crimes and cooperating in the collection of DNA) "will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community," the judicial officer may impose additional conditions. 18 U.S.C. §§ 3142(b), (c)(1).  In that event, the judicial officer shall release the defendant "subject to the least restrictive further condition, or combination of conditions" that "reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B).  The Court is authorized to impose "any other condition that is reasonably necessary to assure the appearance of the person as required and to assure the safety of any other person and the community."  18 U.S.C. § 3142(c)(1)(B)(xiv).

In determining appropriate conditions of release, the judicial officer considers factors including: (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence"; (3) "the history and characteristics" of the defendant and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release." 18 U.S.C. § 3142(g) ("Section 3142(g) factors")[1]. The judicial officer may amend a release order "at any time." 18 U.S.C. § 3142(c)(3).

## II. The Court Should Not Modify Belliveau's Release Conditions

Belliveau asks the Court to modify his conditions of release to allow him to travel to Washington, D.C. on January 20, 2025. The United States opposes because Belliveau is already subject to the "least restrictive" combination of conditions necessary to ensure the safety of the

---

[1] Belliveau also argues that "modification request is even more appropriate in light of the incoming Trump administration's confirmations that President Trump will fully pardon or pursue a policy of dismissal of charges for those in Mr. Belliveau's position on his first day in office on January 20, 2025." ECF No. 21 at 4. It is unclear how this is relevant to the Court's analysis of the Section 3142(g) factors. Nevertheless, the majority of the judges in this District have rejected potential pardons as a grounds for judicial action. *See, e.g.*, *United States v. David Davis* 23-cr-281 (CJN), Minute Order, November 27, 2024 (denying a motion to continue a misdemeanor bench trial based on potential clemency); *United States v. Nathan Hughes*, 23-cr-237 (CJN), Minute Order, November 14, 2024 (denying a motion to continue all proceedings based on potential clemency); *United States v. Cody Connell et al.*, 21-cr-84 (PLF), Mem. Op., November 14, 2024 (Denying a motion to continue sentencing because "[w]hatever the President-elect may or may not do with respect to some of those convicted for their conduct at the Capitol on January 6, 2021, is irrelevant to the Court's independent obligations and legal responsibilities[.]"); *United States v. Whitney Johnson*, 24-cr-141 (JDB), Minute Order, November 13, 2024 (denying a motion to continue all proceedings based on potential clemency); *United States v. Stephen Baker*, 24-cr-121 (CRC), Minute Order, November 11, 2024 (denying a motion to continue all proceedings based on potential clemency); *United States v. Jaimee Avery*, 24-cr-79 (CRC), Minute Order, November 6, 2024 (denying continuance of sentencing hearing based on claim of potential clemency); *United States v. Nicholas Fuller*, 23-cr-209 (CKK), Minute Order, November 6, 2024 (denying motion to continue sentencing hearing based on claim of potential clemency); *United States v. Carnell, et al.*, 23-cr-139 (BAH), Minute Order, November 6, 2024 (denying motion to continue status conference based on claim of potential clemency); *United States v. Lichnowski*, 23-cr-341 (RBW), Minute Order, November 7, 2024 (denying motion to continue sentencing hearing based on claim of potential clemency).

community. 18 U.S.C. § 3142(c)(1)(B). Belliveau was not required to post bond, and is not subject to home detention, a curfew, or GPS monitoring; instead, he must submit to supervision by Pretrial Services, and cannot possess firearms. ECF No. 8. Together with these relatively limited conditions, a travel restriction to prevent Belliveau from returning to the scene of the crime creates the least restrictive combination of conditions required to mitigate the danger that he poses to the community and to law enforcement officers.

The last organized event the defendant attended in Washington, D.C., spiraled into a full-scale riot. This was the scene of his charged crime—a violent felony which contributed to the disruption of the peaceful transition of power.

The nature and circumstances of the offenses in Belliveau's particular case and the evidence in support of the charged offenses are quite serious. There is video evidence of Belliveau using a chemical irritant, likely bear spray, against a Capitol Police Officer. After spraying the officer for a prolonged period of time, Belliveau ran away from the officer as she attempted to pursue him. In doing so, the officer had to leave her fellow officers, who were attempting to restrain another rioter. Video evidence shows that Belliveau actively tried to harm an officer, or at the very least obstruct her from doing her job. As captured by CCTV footage, after spraying the officer, Belliveau did not leave Capitol grounds. He carried a modified hockey stick into the Capitol building as chaos ensued and alarms from the building blared. Belliveau was prepared to engage in violence. He wore a helmet and goggles and did not hesitate to spray an officer trying to do her job. Belliveau's conduct and the extensive video and photographic evidence of Belliveau's conduct weighs heavily in denying his motion.

Belliveau points to *United States v. Peterson*, 1:24-cr-00376 (TSC) as support of modifying his conditions of release, but that case is distinguishable. ECF No. 21 at f.n. 2. Peterson was

5

charged with misdemeanors. ECF Nos. 18 and 19. Peterson did not engage in violent conduct and was not charged with disorderly conduct and carrying a dangerous and deadly weapon. *Id*. Peterson did not directly engage with officers. *Id*. Peterson also quickly pled guilty to the offenses, which required him to acknowledge that he engaged in criminal conduct. *Id*. Belliveau's conduct and circumstances present more concern.

The most compelling reason to deny Belliveau's motion is that allowing his travel to Washington, D.C. places Capitol Police Officers in danger. Belliveau argues that his lack of violent past warrants a modification of his conditions of release. But that makes his return to the Capitol even more concerning – Belliveau was only willing to engage in violence against Capitol Police Officers who were trying to keep a crowd of rioters under control. Many of the same officers will be at the Capitol on January 20, 2025 and they will be tasked with doing the same thing they were tasked with on January 6, 2021 – trying to control a crowd to protect the nation's capital. Allowing Belliveau to return to Washington, D.C., specifically the Capitol building, could put him face to face with the victim officers that he attacked four years ago and place him in the same circumstance in which he already demonstrated a disregard for the law. The least restrictive condition that protects Capitol Police Officers and reflects the weight of the evidence and seriousness of the charges offenses is to prohibit Belliveau's travel to Washington, D.C.

## **CONCLUSION**

For the reasons described above, the United States respectfully requests that this Court to deny Belliveau's motion to modify condition of release.

    Respectfully submitted,

    MATTHEW M. GRAVES
    United States Attorney
    D.C. Bar No. 481052

          By:    */s/ Taylor L. Fontan*
                TAYLOR FONTAN
                Assistant United States Attorney
                Indiana Bar No. 35690-53
                601 D St., NW
                Washington, D.C. 20001
                (202) 815-8597
                Taylor.fontan@usdoj.gov